UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELISABETH HOWIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 03-2661 (RCL) |
| v. | ) |
| | ) |
| OFFICE OF | ) |
| EDDIE BERNICE JOHNSON, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This matter comes before the Court on defendant's motion [40] for summary judgment. Upon full consideration of the motion, plaintiff's opposition [47] thereto, defendant's reply [48] brief, the entire record herein, and applicable law, the Court finds that defendant's motion will be GRANTED for the reasons set forth below.

**I.    BACKGROUND**

Defendant, the Office of Eddie Bernice Johnson, comes before this Court seeking summary judgment. In the underlying case before the Court, plaintiff, Ms. Howie, alleges violations of the Congressional Accountability Act of 1995 ("CAA"), which incorporates § 703 of the Civil Rights Act of 1964, on the basis that she was unlawfully terminated as a result of race and age discrimination. 2 U.S.C. § 1301; 42 U.S.C. § 2000e-2.

Plaintiff, an African American woman over the age of forty, worked as an Executive Assistant and Scheduler for defendant from February 2003 until June 2003. (Compl. ¶¶ 7, 14.) Representative Johnson, the first African American Congresswoman to ever be elected from

Dallas, personally hired plaintiff for the position.  (*Id*.)  Before her employment with defendant, plaintiff worked as an Office Scheduler in the Office of Representative William Coyne for sixteen years.  (Def.'s Mot. for Summ. J. at 2.)  Plaintiff's primary duties included "scheduling the Congresswoman's committee meetings, office meetings, staff meetings, and constituent meetings; prioritizing the Congresswoman's scheduling requests in order to set her schedule; managing the Congresswoman's calendar; and coordinating the Congresswoman's activities throughout the day." (*Id.* at 5.)  Though plaintiff asserts that she "always performed her duties . . . in a satisfactory manner," defendant contends that "problems with plaintiff's performance surfaced almost immediately"  (Compl. ¶ 9; Def.'s Mot. for Summ. J. at 6.)  However, plaintiff claims that she "never received any written performance review" or "communication . . . that [she] was performing her job in an unsatisfactory manner."  (Compl. ¶¶ 9–10.)

The Congresswoman's district is "racially, ethnically, and economically diverse," and Rep. Johnson prefers to maintain a diverse office to reflect her constituency.  (*Id*. at 4; *Johnson Dep.*, Ex. 2 to Def.'s Mot. for Summ. J. at 139.)  Rep. Johnson admits to being "an Affirmative Action person" when there is "an opportunity, [] enough applications and [] a certain minority."  (*Johnson Dep.*, Ex. 2 to Def.'s Mot. for Summ. J. at 43, 139.)  After losing an Asian American member of her staff in August 2002, Rep. Johnson told her former Chief of Staff that "when [there is] an opening and . . . applications come in, if [there] happens to be one that is an Asian . . . then [she would] like that [application] to be considered." (*Id.* at 44–45.)  Plaintiff was terminated in June 2003, nearly ten months after the Congresswoman's statement, and was replaced by an Asian American woman under the age of forty.

**II.     DISCUSSION**

    **A.     LEGAL STANDARD**

        **i.     Summary Judgment**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson,* 477 U.S. at 248. A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322; *Anderson,* 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*  In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton,* 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C. Cir. 1993).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Greene,* 164 F.3d at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (citations omitted).

### ii.     Congressional Accountability Act

Under the CAA, employees of the House of Representatives are to be free from any discrimination based on race or age.  2 U.S.C. §§ 1301(3)(A), 1311(a)(1–2).  When summary judgment is sought by a defendant on a discrimination claim filed under the CAA, the Court is required to assess the challenge utilizing the test announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  *See Fields v. Office of Johnson,* 459 F.3d 1, 15 n. 24 (D.C. Cir. 2006) ("[The plaintiff] alleges racial and gender discrimination in violation of 2 U.S.C. § 1311, which incorporates § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, to which the *McDonnell Douglas* framework applies....").

Under *McDonnell Douglas,* a plaintiff has the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence.  *McDonnell Douglas,* 411 U.S. at 802.  To establish a *prima facie* case in the absence of direct evidence of discrimination, a plaintiff must show "that: '(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" *Stella v.*

*Mineta,* 284 F.3d 135, 145 (D.C. Cir. 2002) (quoting *Brown v. Brody,* 199 F.3d 446, 452 (D.C. Cir. 1999)).  Once the plaintiff has established a *prima facie* case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the [the defendant's actions]." *McDonnell Douglas,* 411 U.S. at 802.  If such an explanation is provided, the plaintiff then shoulders the burden of showing that the legitimate, nondiscriminatory reason offered by the defendant was a mere pretext for discrimination. *Id.* at 804.

### B.      PLAINTIFF'S CLAIM OF RACE DISCRIMINATION

Plaintiff alleges that she was unlawfully terminated by defendant because of her race, African American.  (Compl. ¶¶ 20–24.)  Plaintiff bases this allegation primarily on a statement made by Rep. Johnson to her former Chief of Staff in August 2002, in which the Congresswoman made clear her desire to give special consideration to Asian American job applicants so that the office would reflect her diverse constituency.  (*Johnson Dep.*, Ex. 2 to Def.'s Mot. for Summ. J. at 44–45.)  Because plaintiff was not party to this conversation and admits to never hearing defendant make racially disparaging remarks, the Court must rely on the *McDonnell Douglas* burden-shifting analysis in order to determine whether there exists any genuine issue of material fact.  (*Howie Dep.*, Ex. 1 to Def.'s Mot. for Summ. J. at 78–79); *McDonnell Douglas,* 411 U.S. at 802.

#### i.     Plaintiff's *Prima Facie* Case

Plaintiff must show "that: '(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" *Stella,* 284 F.3d at 145.  The fact that plaintiff, an African American employee of the House of Representatives, is a member of a protected class under the CAA is undisputed.

(Def.'s Mot. for Summ. J. at 16.)  An adverse employment action is defined as any "tangible employment action [that] constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," and plaintiff's termination is clearly covered by that definition  *Brown,* 199 F.3d at 456.

In order to establish an inference of discrimination, plaintiff may "promulgate evidence from which a reasonable jury could infer the adverse employment action was the result of discrimination."  *Clipper v. Billington*, 414 F. Supp. 2d 16, 23 (D.D.C. 2006).  Plaintiff does not attempt to demonstrate that she was treated any differently from similarly situated employees who are not part of the protected class.  (Def.'s Mot. for Summ. J. at 16–17.)  Instead, plaintiff relies on the "open office secret that the Congresswoman [had] always wanted an Asian person . . . and that the person [who] came in for [plaintiff's] position was an Asian person."  (*Howie Dep.*, Ex. 1 to Def.'s Mot. for Summ. J. at 10–11.)  Plaintiff also asserts that she "always performed her duties . . . in a satisfactory manner and never received any written performance review" or "communication . . . that [she] was performing her job in an unsatisfactory manner."  (Compl. ¶¶ 9–10.)  As such, the Court is satisfied that plaintiff has met her initial burden and that the facts put forth by plaintiff suffice to create a reasonable inference of race discrimination.

    **ii.**  **Defendant's Legitimate, Nondiscriminatory Reason for Plaintiff's Termination**

If the plaintiff successfully establishes a *prima facie* case, a presumption arises that the employer unlawfully discriminated against the employee.  *Tex. Dept. Of Cmty. Affairs v. Burdine*, 250 U.S. 248,  254 (1981).  To rebut this presumption, the employer must articulate a

legitimate, non-discriminatory reason for its action. *Id.* The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* Rather, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993). Defendant relies upon evidence that plaintiff performed below the Congresswoman's expectations. (Def.'s Mot. for Summ. J. at 23.) Plaintiff does not dispute the following facts: that she (1) did not confirm the Congresswoman's appointments, (2) made at least one glaring typographical error in mail going out under the Congresswoman's signature, (3) did not ensure that the Congresswoman's schedule from free from errors, (4) did not ensure that protocol mail got sent out in a timely fashion, and (5) listened to a personal TV/radio at her desk. (*Howie Dep.*, Ex. 1 to Def.'s Mot. for Summ. J. at 39, 61, 66–69, 72–73.)

Defendant points to a number of incidents where Rep. Johnson was personally affected by plaintiff's performance deficiencies and typographical oversights. (Def.'s Mot. for Summ. J. at 24.) Defendant claims that the Congresswoman often attempted to attend meetings noted on her schedule only to discover that "the door was locked or the room was empty" because the schedule indicated the incorrect day or time for the meeting. (*Johnson Dep.*, Ex. 2 to Def.'s Mot. for Summ. J. at 56.) Rep. Johnson's former Legislative Director, Murat Gokcigdem, corroborates defendant's allegations by asserting that "[o]n three different occasions in a short time span . . . Rep. Johnson expressed her frustration . . . [and] her embarrassment [] at walking a considerable distance over to the meeting site to give a speech and finding no one in the room." (*Gokcigdem Decl.*, Ex. 4 to Def.'s Mot. for Summ. J. ¶ 4.) Typographical errors in outgoing

mail bearing the Congresswoman's signature as well as a missed opportunity for the Congresswoman to accept a speaking engagement due to plaintiff's inadequate filing system further evidence plaintiff's performance problems, according to defendant. *(See June 2, 2003 Protocol Letter*, Ex. 9 to Def.'s Mot. for Summ. J.; *Johnson Dep.*, Ex. 2 to Def.'s Mot. for Summ. J. at 105–106.)  All of the allegations put forth by defendant constitute legitimate, nondiscriminatory reasons for plaintiff's terminations, and as such, the burden now shifts back to plaintiff.

### iii. Plaintiff's Efforts to Show that Defendant's Proffered Reason is Mere Pretext

Plaintiff must now prove by a preponderance of the evidence that the reasons proffered by defendant were merely pretext for the alleged true cause of plaintiff's termination, race discrimination. *McDonnell Douglas,* 411 U.S. at 802.  Even viewing the evidence in the light most favorable to plaintiff, this Court is convinced that plaintiff has not satisfied her final burden.  Plaintiff fails to overcome two major presumptions against race discrimination: (1) that the Congresswoman who made the decision to terminate plaintiff is also African American, and (2) that plaintiff was hired and fired by the same person within a very short period of time. *Waterhouse v. District of Columbia*, 298 F.3d 989, 996 (D.C. Cir. 2002); (Def.'s Reply at 1–2.) The sole evidence relied upon by plaintiff, a statement made by Rep. Johnson to her former Chief of Staff nearly ten months prior to plaintiff's termination, carries little persuasive value. Between August 2002 when Rep. Johnson asserted that "when [the office has] an opening," she would like qualified Asian American applicants "to be considered" and February 2003 when plaintiff was hired, defendant had four other job openings for which it could have hired Asian

Americans.  (*Johnson's Dep.*, Ex. 2 to Def.'s Mot. for Summ. J. at 45; Def.'s Mot. for Summ. J. at 22.)

The fact that plaintiff's replacement, Ms. Reistrup, happens to be Asian American does not create a sufficient nexus between Rep. Johnson's statement of August 2002 and plaintiff's termination in June 2003, particularly considering the Congresswoman's dissatisfaction with plaintiff's performance.  Though Rep. Johnson took note of Ms. Reistrup's lack of Capitol Hill experience, such an acknowledgment does not indicate that Ms. Reistrup was unqualified or less qualified than plaintiff for the position since according to Rep. Johnson, "schedulers do not have to work on the Hill. The scheduler needs to know details [and] how to put them down with directions." (*Johnson Dep.*, Ex. 2 to Def.'s Mot. for Summ. J. at 71–72; *Field's June 12, 2003 Mem.*, Ex. 8 to Pl.'s Opp. to Def.'s Mot. for Summ. J.)  Defendant's former Chief of Staff stated that Ms. Reistrup "[was] very professional and appear[ed] to be a bright, capable person" who could easily "come up to speed." (*Field's June 12, 2003 Mem.*, Ex. 8 to Pl.'s Opp. to Def.'s Mot. for Summ. J.)  Further, the woman currently holding defendant's Scheduler position is the same woman who held the position prior to plaintiff's hiring.  (Def.'s Mot. for Summ. J. at 13; *Johnson Dep.*, Ex. 2 to Def.'s Mot. for Summ. J. at 136.)  She, too, is an African American woman over the age of forty.  (*Id.*)  Plaintiff needed to establish more than "the mere existence of a scintilla of evidence" in support of her position, and she has not satisfied that burden.  *Anderson*, 477 U.S. at 255.  As such, this Court is persuaded that defendant's proffered legitimate reasons, not race discrimination, were the true bases for plaintiff's termination.

### C.     PLAINTIFF'S CLAIM OF AGE DISCRIMINATION

Plaintiff alleges that she was unlawfully terminated by defendant because of her age, over forty. (Compl. ¶¶ 25–29.) Plaintiff asserts two bases for this allegation: (1) that defendant hired a person under the age of forty as plaintiff's replacement and (2) that plaintiff was the only employee of defendant over the age of forty, an assertion that has since been proved false. (*Howie Dep.*, Ex. 1 to Def.'s Mot. for Summ. J. at 26–28.) Plaintiff admits in her deposition that no other evidence exists that she "can point to that supports [her] allegation that [she] was discriminated on the basis of [her] age." (*Id.* at 28.) Because no direct evidence of age discrimination exists, the Court must rely on the *McDonnell Douglas* burden-shifting analysis in order to determine whether there is any genuine issue of material fact. *McDonnell Douglas,* 411 U.S. at 802.

#### i.     Plaintiff's *Prima Facie* Case

Plaintiff must show "that: '(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" *Stella,* 284 F.3d at 145. That plaintiff is a member of ADEA's protected age group, over age forty, is an undisputed fact. (Def.'s Mot. for Summ. J. at 31.) Defendant also does not dispute that plaintiff suffered an adverse employment action when she was terminated from her position as defendant's Scheduler and Executive Assistant. (*Id.*) However, this Court is not satisfied that the evidence provided by plaintiff gives rise to a reasonable inference of age discrimination.

Though plaintiff originally maintained that, at age 46, she was the only person in defendant's Washington, DC office over the age of forty, the evidence shows that two other

10

office employees were older than plaintiff, including the Congresswoman who was 68 at the time of plaintiff's employment. (*Howie Dep.*, Ex. 1 to Def.'s Mot. for Summ. J. at 26–27; Def.'s Mot. for Summ. J. at 2.) Plaintiff also admits that she never heard Rep. Johnson make disparaging remarks about older people, express her desire to replace plaintiff with a younger person, or generally recruit younger applicants. (*Howie Dep.*, Ex. 1 to Def.'s Mot. for Summ. J. at 79.) Though plaintiff asserts in her Complaint that "[o]n or about April 2003, [d]efendant began an active campaign to recruit a person of Asian descent who was younger than 40 years of age," plaintiff never provides any testimony or other evidence in support of her age discrimination theory. (Compl. ¶ 13.) Plaintiff blatantly ignores the fact that of the fourteen people who have occupied the D.C. Scheduler position between January 2000 and January 2006, seven, including plaintiff, were over age forty at the time they held the position. (*Def.'s Resps. to Pl.'s First Set of Interrogs.*, Ex. 14 to Def.'s Mot. for Summ. J., Resp. No. 4.) Further, of all fourteen former Schedulers, only plaintiff was terminated. (*Id.*, Resp. No. 17.)

> It is not a violation of the Act to replace an employee in the protected class with a younger person, so long as the protected employee is not replaced because of [her] age. Because younger people often succeed to the jobs of older people for perfectly legitimate reasons, the mere fact that an older employee is replaced by a younger one does not permit and inference that the replacement was motivated by age discrimination.

*La Monagne v. Am. Convenience Products, Inc.*, 750 F.2d 1405 (7th Cir. 1984) (*cited in Goss v. George Washington Univ.*, 942 F. Supp. 659, 663 (D.D.C. 1996.) Plaintiff needed to establish more than "the mere existence of a scintilla of evidence" in support of her position, and she has not satisfied that burden. *Anderson*, 477 U.S. at 255. The Court is satisfied that plaintiff's claim of age discrimination is groundless.

### III. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment will be GRANTED. Plaintiff needed to establish more than "the mere existence of a scintilla of evidence" in support of her claims, and she has not satisfied that burden. The Court is satisfied that no genuine issue of material fact exists. *Anderson*, 477 U.S. at 255. Accordingly, plaintiff's Complaint will be dismissed with prejudice in its entirety.

A separate Order shall issue this date.


Signed by Chief Judge Royce C. Lamberth on August 14, 2008.